Chief Judge Kaye
(concurring). Let there be no doubt: This Court stands as one in its recognition of the prized right of Americans to serve on juries, in its denunciation of invidious discrimination in jury selection and in its commitment to apply the law to assure that objective.
The law, moreover, is clear — well known to Trial Judges and in particular, as the record establishes in this case, well known to the Trial Judge here. To establish a prima facie case of a Batson violation, a defendant must show that the exercise of *509 peremptory challenges by the prosecution removes one or more members of a cognizable racial (in this case) group from the venire, and that other facts and circumstances support a finding that the use of peremptory challenges excludes potential jurors because of their race.
I agree with Judge Graffeo and my Colleagues in the majority that defendant has not satisfied the test. When defendant first raised a Batson challenge, the trial court explicitly invited defense counsel to make the necessary record supporting a finding that the prosecutor was using peremptory challenges to exclude potential jurors because of their race. The Trial Judge pointedly asked defense counsel for “facts and other relevant circumstances to create an inference of exclusion of a cognizable group.” That would have shifted the burden to the People to provide race-neutral reasons for its strikes. Defense counsel, however, did not make that showing, arguing instead that challenged jurors had attended college, or had (or lacked) prior jury service. Attendance at college, or prior jury service, does not satisfy the test for a prima facie showing of purposeful discrimination. Many college graduates and former jurors are appropriately challenged. As the Trial Judge made clear, counsel simply had to indicate that accepted jurors had qualities similar to challenged jurors, thereby indicating that race may have had a role, but did not do so.
Experience is indeed a great teacher. My own years on this extraordinary Court, dealing with countless Batson challenges, have brought me far closer to the perception of Justice Thur-good Marshall, that the “inherent potential of peremptory challenges to distort the jury process by permitting the exclusion of jurors on racial grounds should ideally lead the Court to ban them entirely from the criminal justice system” (Batson v Kentucky, 476 US 79, 107 [Marshall, J., concurring]). The intense focus on factors such as skin color, accent and surname in jury selection is wholly at odds with our societal goal of dealing with people as individuals, on their personal qualities.
In this State, moreover, we have both an exceedingly, perhaps uniquely, high number of peremptory challenges, and a requirement that all peremptories be exhausted in order to preserve a claim of error. The opportunity for mischief — let alone the huge, expensive waste of juror time — therefore abounds. My nearly 16-year experience with Batson persuades me that, if peremptories are not entirely eliminated (as many have urged), they should be very significantly reduced.